UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 08-0004-01ML |
| | : | CR No. 08-0059-01ML |
| DANIEL TEJEDA | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

      This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether the Defendant is in violation of the terms of his supervised release and, if so, to recommend a disposition of this matter. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a preliminary revocation hearing was held on October 13, 2011, at which time Defendant, through counsel and personally, admitted that he was in violation of his supervised release conditions as to the charged violations. At this hearing, I ordered Defendant detained pending my Report and Recommendation and final sentencing before Chief Judge Mary M. Lisi.

      Based upon the following analysis and the admission of Defendant, **I recommend that the Defendant be committed to the Bureau of Prisons for a term of four months' incarceration on CR No. 08-004ML and four months' incarceration on CR No. 08-059ML to run consecutively to be followed by a concurrent term of supervised release of thirty-two months. I further recommend that, while on supervised release, Defendant participate in an outpatient or inpatient substance abuse treatment program as approved by the United States Probation Office and that Defendant submit to no more than seventy-two urine specimens per calendar**

**year to determine whether Defendant has reverted to the use of drugs and/or alcohol; participate in a program of mental health treatment as approved by the United States Probation Office; complete the unpaid balance of his restitution obligations in both CR No. 08-004ML and CR No. 08-059ML; and perform the balance of his 200 hours of community service ordered on April 28, 2011 as directed by the United States Probation Office.**

Background

On August 29, 2011, the Probation Office petitioned the Court for the issuance of an arrest warrant. On August 29, 2011, the District Court reviewed the request and ordered the issuance of an arrest warrant. Subsequently, Defendant appeared before the Court for a preliminary revocation hearing on October 13, 2011 at which time Defendant admitted to the following charges:[1]

> **While on supervision, the defendant shall not commit another federal, state, or local crime.**
>
> On May 5, 2011, Mr. Tejeda committed the offense of Wire Fraud as evidenced by the documents submitted by the U.S. Secret Service.
>
> **The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**

---

[1] As part of an informal "plea agreement" with Defendant, the Government moved to dismiss the following charge with prejudice in exchange for Defendant's admissions of all other charges:

> **While on supervision, the defendant shall not commit another federal, state, or local crime.**
>
> On April 4, 2011, Mr. Tejeda committed the offense of Conspiracy to Possess with Intent to Distribute 500 grams of Cocaine, as evidenced by his admission to Providence, Rhode Island Police Officers and his notarized statement of facts submitted on April 29, 2011.

The Court granted the Government's Motion and dismissed the charge.

Mr. Tejeda failed to submit Monthly Supervision Reports for the months of May 2011, June 2011 and July 2011, which were due by June 5, 2011, July 5, 2011 and August 5, 2011 respectively.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On July 12, 2011, July 29, 2011, and August 16, 2011, Mr. Tejeda failed to report as instructed.

**The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.**

Mr. Tejeda has failed to work at a lawful occupation since being terminated in July 2011.

**The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**

On or about June 13, 2011 and again on July 28, 2011, Mr. Tejeda moved from his last approved residence and failed to notify the Probation Office at least ten days prior to changing his residence.

**The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**

During July 2011, Mr. Tejeda failed to notify the Probation Office that he was terminated from his employment.

**The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.**

On April 4, 2011, Mr. Tejeda had contact with Leron Porter, a convicted felon, without the consent of the Probation Office and conspired to engage in criminal activity.

**The defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.**

> Mr. Tejeda failed to attend his substance abuse treatment sessions on July 6, 2011, July 7, 2011, July 20, 2011 and July 27, 2011. He also failed to appear for random drug testing on April 19, 2011 and August 9, 2011.

As the Defendant has admitted these charges, I find he is in violation of the terms and conditions of his supervised release.

**Recommended Disposition**

Section 3583(e)(2), 18 U.S.C., provides that if the Court finds that Defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release was previously imposed in each case. Therefore, the terms cannot be extended.

Section 3583(e)(3), 18 U.S.C., provides that the Court may revoke a term of supervised release and require the Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term or supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond 5 years if the instant offense was a Class A felony, 3 years for a Class B felony, 2 years for a Class C or D felony, or 1 year for a Class E felony or a misdemeanor. If a term of imprisonment was imposed as a result of a previous supervised release revocation, that term of imprisonment must be subtracted from the above-stated maximums to arrive at the current remaining statutory maximum sentence. In this case, Defendant was on supervision for Class C felonies. Therefore, he may not be required to serve more than two years' imprisonment on each case upon revocation.

Pursuant to 18 U.S.C. § 3583(h) and § 7B1.3(g)(2), when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is thirty-six months on each case. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Section 7B1.1 of the Sentencing Guidelines provides for three grades of violations (A, B, and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) notes that a Grade A violation constitutes conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision.

Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) provides that upon a finding of a Grade C violation, the court may revoke, extend, or modify the conditions of supervision. In this case, Defendant has committed Grade A violation. Therefore, the Court shall revoke supervision.

Section 7B1.3(c)(1) provides that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that Defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. Neither of these provisions apply to this matter.

Section 7B1.3(d) states that any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment. In this case, there is an outstanding restitution in the amount of $5,789.72 for Case

No. 1:08-CR-0004-01ML and $4,313.00 for Case No. 1:08-CR-0059-01ML.  Interest has been waived.

Section 7B1.4(a) of the USSG provides that the criminal history category is the category applicable at the time Defendant originally was sentenced.  In this instance, Defendant had a criminal history category of I at the time of sentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range.  In this case, Defendant committed Grade B violations and has a Criminal History Category of I.  Therefore, the applicable range of imprisonment for this violation is four to ten months on each case.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

**Offender's Characteristics**

The Defendant is twenty-five years of age.  He graduated from Central High School in 2004. He attended CCRI for the 2004/2005 school year but did not earn any credits.  He enlisted in the U.S. Marines in 2005 and was discharged in early 2006 after several disciplinary issues.

Defendant fathered a daughter who was born in late 2006.  Defendant worked loading trucks at UPS in Warwick from late 2006 to the spring of 2007 and worked as a landscaper in the summer of 2007.  In late 2007, Defendant reportedly moved in with his girlfriend and their daughter in Florida until March 2008.  Defendant worked briefly as a convenience store clerk in Florida during this period.

Defendant has a history of substance abuse and his drug habit increased in 2007. His contact with law enforcement also increased in 2007. He was charged with firing a weapon in a compact area on January 1, 2007. He plead nolo, and the charge was filed for one year. He was charged with driving without a license on September 8, 2007 and fined. He was charged with possession of crack cocaine on October 14, 2007. He plead nolo and received a two-year suspended sentence. On December 5, 2007, Defendant robbed a bank in Providence and plead guilty before this Court in 2008. U.S. v. Tejeda, CR No. 08-004ML. Moreover, on March 20, 2008, Defendant was charged with identity fraud and plead guilty before this Court in 2008. U.S. v. Tejeda, CR No. 08-059ML. The fraud case arose out of Defendant's theft of a fellow soldier's identity information and social security number during boot camp in 2005 and later use of that information in 2006 for purposes of engaging in various fraudulent financial transactions. These federal cases were combined for sentencing, and Defendant received a total sentence of forty-one months' imprisonment on both cases and a three-year term of supervised release with special conditions.

Defendant commenced his supervised release on March 25, 2011, and it did not start out well. While in a half-way house, Defendant apparently had communications with another federal inmate, Leron Porter,[2] about purchasing a ½ kilogram of cocaine upon his release from Mr. Porter or one of his associates. The drug transaction was a set-up and, on April 4, 2011, Defendant was apparently robbed, assaulted and stabbed by Mr. Porter and/or his associates. On April 28, 2011, Defendant's attempt to purchase cocaine was addressed by a modification of conditions requiring Defendant to perform 200 hours of community service. (Document No. 17). The rationale for a

---

[2] Mr. Porter is a violent felon who was just completing a ninety-seven month sentence for federal firearms charges. See U.S. v. Porter, CR No. 04-028ML. Mr. Porter is again incarcerated facing state charges including a murder committed on May 9, 2011.

modification rather than revocation was "[b]ased upon [Defendant's] openness with the Providence Police Department, and his acceptance of responsibility, albeit after being discovered, combined with the relatively short time that he has been involved in substance abuse treatment." Id. at p. 2; see also Defendant's Ex. A.

Although Defendant was afforded a substantial break regarding his failed attempt to purchase cocaine, he did not change his ways. Defendant has admitted to committing wire fraud in this violation case. On or about May 5, 2011, Defendant used the Internet service craigslist to commit the wire fraud. He posted an ad to sell airline vouchers and accepted funds from an intended purchaser but never delivered the airline vouchers or returned the money. Defendant has also admitted to several Grade C compliance violations such as failing to file monthly reports, failing to notify Probation of changes in job status and residence, failing to attend drug treatment sessions and missing drug tests.

This is a troubling case. Defendant is only twenty-five years of age and has spent most of the past five years either committing crimes or in jail. Defendant's forty-one month prison term in these cases had no impact on his behavior since he committed two felony offenses in the first two months of supervised release – an attempt at a substantial cocaine purchase and wire fraud. His record of technical noncompliance also reveals no respect for this Court, his Probation Officer or the obligations of supervised release. Defendant needs a wake-up call and hopefully a violation sentence will assist him.

As part of the informal "plea agreement," the Government and Defendant jointly recommended a low-end sentence of four months on both cases to be followed by additional supervised release. The guideline range is four to ten months in each case. While I agree that

further supervised release is warranted and that Defendant should be given some "credit" for accepting responsibility and admitting his violations, a total revocation sentence of four months is too lenient on this record. In fact, an argument could be credibly made that Defendant should be given the maximum sentence due to his blatant disregard of his supervised release conditions and almost immediate return to felony criminal behavior. However, out of deference to the parties' "plea" discussions and Defendant's acceptance of responsibility, I will not recommend the maximum. Rather, I recommend the low-end sentence proposed by the parties of four months but consecutively in both cases for a total term of imprisonment of eight months to be followed by a thirty-two month term of supervised release with the special conditions specified below. Hopefully, this punishment and a new term of supervised release will give Defendant the time and tools to take his life in a more positive direction.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a), **I recommend that the Defendant be committed to the Bureau of Prisons for a term of four months' incarceration on CR No. 08-004ML and four months' incarceration on CR No. 08-059ML to run consecutively to be followed by a concurrent term of supervised release of thirty-two months. I further recommend that, while on supervised release, Defendant participate in an outpatient or inpatient substance abuse treatment program as approved by the United States Probation Office and that Defendant submit to no more than seventy-two urine specimens per calendar year to determine whether Defendant has reverted to the use of drugs and/or alcohol; participate in a program of mental health treatment as approved by the United States Probation Office; complete the unpaid balance of his restitution obligations in both CR No.**

**08-004ML and CR No. 08-059ML; and perform the balance of his 200 hours of community service ordered on April 28, 2011 as directed by the United States Probation Office.**

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Fed. R. Crim. P. 59; LR Cr 57.2. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's Decision. <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 18, 2011